IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| SHEENA YARBROUGH, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Civil Action No: 5:15-CV-2325** |
| ) | |
| THE CITY OF DECATUR ) | |
| ALABAMA HOUSING ) | |
| AUTHORITY, ) | |
| ) | |
| **Defendant.** ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW the Plaintiff, Sheena N. Yarbrough, by and through her attorney of record, Michael Forton, and moves this Court to enter an order denying Defendant's motion for summary judgment.

**RESPONSE TO DEFENDANT'S STATEMENT OF FACTS**

The Defendant states in their Statements of Undisputed Fact that indictments were present to the grand jury "as witnessed by Officer Lance Royals of the Limestone County Sheriff's Department." See Defendant's Exhibit "4". Although the indictment lists Officer Royals as a witness there is no indication that he spoke, what he may have said or if he offered any actual testimony regarding the matter.

Although the Defendant states in their Statements of Undisputed Fact that Ms. Yarbrough "claimed" that the indictments were due to be dismissed what Ms. Yarbrough actually offered at the hearing was a copy of the Court's order stating that the indictments were being dismissed upon payment of court costs. See Plaintiff's Exhibit "A" and "B."

1

## ADDITIONAL UNDISPUTED FACTS

It is undisputed that Plaintiff was asked if she had given the Housing Authority a letter denying the accusations and asked for a hearing and she says, "Yes." See Plaintiff's Exhibit "A" and Defendant's Exhibit "16."

It is also undisputed that neither the Housing Authority nor the Hearing Officer in this case asked the Plaintiff any question regarding her case. See Plaintiff's Exhibit "A." At no time during the hearing did the Housing Authority attempt to prove their case by questioning the Plaintiff nor did the Hearing Officer as any questions regarding the matter. See Defendant's Exhibit "16."

## STANDARD OF REVIEW FOR SUMMARY JUDGEMENT

Summary Judgment is proper when there are no genuine issues of material fact in dispute between the parties. Federal Rule of Civil Procedure 56(c) establishes the guidelines for summary judgment and provides the following:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c).

Summary judgment in any case is appropriate only when there are no genuine issues of material fact upon which reasonable people could disagree. Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(c)(2); Allmond v. Akal Sec., Inc., 558 F.3d 1312, 1316 (11th Cir. 2009), cert. denied, 130 S. Ct. 1139, 175 L. Ed. 2d 972 (2010). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is

no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

As demonstrated by the facts of this case, the Defendant fails to meet this standard and the Defendant is therefore not entitled to Summary Judgment.

## ARGUMENT

Defendant Decatur Housing Authority has not met its burden to show that they are entitled to judgment as a matter of law. The decision of the Hearing Officer was based solely on hearsay which is in violation of binding Eleventh Circuit precedent. The hearsay evidence relied upon by the Hearing Officer fails to meet the standard of reliability set out in these cases. The Hearing Officer's decision also could not have been based on a perceived demeanor of the Plaintiff.

**I.  The Hearing Officer's decision was based on solely on hearsay evidence, in violation of binding Eleventh Circuit precedent**.

A line of cases from the Eleventh Circuit have held that the decision to terminate Section 8 voucher assistance cannot be based solely on hearsay. In each of these case the court has found a lack of due process in spite of the fact that the hearing officer was able to observe the recipient testifying.

In Basco v. Machin, 514 F.3d 1177 (11th Cir. 2008), a recipient's voucher was threatened with termination due to an alleged unauthorized guest living in their home. In Basco, as in this case, the recipient appeared and testified at her own hearing. In Basco, as in this case, the Housing Authority was attempting to terminate a recipient's voucher based on a third party statement to a police officer. In Basco, as in this case, the Housing Authority took the position that once an accusation has been made against a recipient that the burden is on the recipient to

3

exonerate themselves. In Basco, as the Housing Authority's affidavit of James Mason has now confirmed in this case, the Housing Authority attempted to shift the burden to the recipient to disprove their culpability. In Basco, as in this case, where the Housing Authority attempts to prove guilt through a general accusation the Court should recognize that "no evidence substantiates that claim." Id. at 1183.

In Lane v. Fort Walton Beach Housing Authority, 518 Fed. Appx. 904 (11th Cir. Fla. 2013), a recipient's voucher was threatened with termination due to an alleged unauthorized guest living in their home. In Lane, the Housing Authority offered numerous copies of the same document pulled from the sex offender registry over several months to show that the recipients address was still the reported address for the alleged unauthorized occupant. In Lane, as in this case, the hearing officer attempted to use the recipient's non-action as evidence of their guilt. [1] Although the Defendant attempts to distinguish this case as a failure to establish a particular issue (the length of the stay) the Court's decision states it is based on the "totality of the allegations in the Lanes' complaint" which included "an inability to confront or cross-examine witnesses, [the Housing Authority's] failure to provide them with adequate pre-termination notice, and [the Housing Authority's] failure to issue an adequately reasoned decision." Id. at 913.

In Ervin v. Housing Authority of Birmingham, 281 Fed. Appx. 938 (11th Cir. 2008), a recipient's voucher was threatened with termination due to drugs allegedly being found in their

---

[1] The hearing officer's decision in that case specifically stated that he was relying on the fact that the recipients "had never secured a document showing that their address was removed from the registry." In similar fashion the Decatur Housing Authority is continuing to claim that Ms. Yarbrough should have contradicted facts not raised in the hearing is, in effect, claiming that it was Ms. Yarbrough's responsibility to explain the criminal case against her and then dispute them.

4

home during the execution of a search warrant. In Ervin, as in this case, it was generally asserted that a crime has been committed and law enforcement were involved. In Ervin, as in this case, the Housing Authority failed to produce the police officer or any witness with knowledge of the alleged events. In Ervin, as in this case, the Housing Authority offered very specific accusations without facts or other information to support their hearsay suppositions.

In Sanders v. Sellers-Earnest, 768 F. Supp. 2d 1180 (M.D. Fla. 2010), a recipient's voucher was threatened with termination due to an alleged unauthorized guest living in their home. In Sanders, as in this case, the recipient appeared and testified at her own her hearing. In Sanders, as in this case, the hearing officer relied the summary of a statement to a third party.[2] In Sanders, as in this case, the evidence failed to include the actual statement that the summary was based upon.[3] In Sanders, no witness was brought to substantiate the accusations against the Defendant or to explain the underlying facts. In fact, of the cases from the 11th Circuit Sanders goes the furthest and actually states that the recipient's due process rights **were violated** due to

---

[2] Notably, although both Sanders and this case involve the statement of a third party to a police officer, this case is much more troubling since the Housing Authority is now a.) relying on a summary decision based on that summary statement and b.) the statement in this case was allegedly made by a "confidential informant" whose bias or motivations cannot be reviewed.

[3] "Like Ervin, the evidence in this case supporting the hearing officer's decision consists entirely of hearsay. Also as in Ervin, the only record evidence supporting the hearing officer's decision is a description of the contents of the police reports, in this case in the hearing officer's decision itself, as the police reports are not of record. While the Court has no doubt that the hearing officer's description of the contents of the police reports is accurate, and readily concludes that the police officers would have no reason to inaccurately report what Davis told them, this Court has no way to assess the reliability of Davis' assertions. He is not, under the circumstances, free from potential bias. As in Ervin, this Court is unable to conclude from the record that "the 'factors that assure the underlying reliability and probative value of the evidence' necessarily are present." id. (quoting Basco, 514 F.3d at 1182). Simply put, the evidence in this record has even "less reliability and probative value than the two unauthenticated police reports . . . considered in Basco." Lane at 1186-1187.

the fact that she was not allowed to cross-examine the witnesses. Sanders does however go on to note that this is not an absolute right.

In <u>Taylor v. Decatur Housing Authority</u>, 2010 U.S. Dist. LEXIS 144770 (N.D. Ala. 2010) a recipient's voucher was threatened with termination by the Decatur Housing Authority due to the alleged sale of drugs. In <u>Taylor</u> the Decatur Housing Authority attempted to terminate the recipient's voucher based on a newspaper article which stated she had been arrested along with the fact that Ms. Taylor confirmed she was arrested at the hearing. In <u>Taylor</u>, as in this case, the only evidence offered by the Decatur Housing Authority at the hearing was proof of an on-going criminal proceeding. In <u>Taylor</u>, as in this case, the Decatur Housing Authority argued that it was the recipient's burden to establish her innocence once she was accused at the hearing.

In differentiating these cases from Ms. Yarbrough's case the only major distinguishable factor remaining is that the evidence offered against Ms. Yarbrough is an indictment instead of a police report or an arrest. In attempting to distinguish these cases it seems that the Decatur Housing Authority believes that regardless of the various courts' rulings about the sufficiency of the evidence at an administrative hearing that if that same evidence was offered to a grand jury (which then returned a true bill) that this would somehow make the evidence sufficient.

**II.      The hearsay evidence is insufficient in light of the Eleventh Circuits test for the admissibility of hearsay evidence in <u>J.A.M. Builders</u>.**

In the context of an administrative proceeding, the Eleventh Circuit has created a framework for the evaluation of the reliability and probative force of hearsay as cited by the <u>Basco</u>, <u>Ervin</u> and <u>Sanders</u> courts. The <u>Sanders</u> Court [citing the 11th Circuit's test in <u>J.A.M. Builders, Inc. v. Herman</u>, 233 F.3d 1350 (11th Cir. 2000)] reviewed the reliability and probative

6

force of hearsay evidence offered at a section 8 housing benefit termination hearing based on the following factors:

> (1) the out-of-court declarant was not biased and had no interest in the result of the case; (2) the opposing party could have obtained the information contained in the hearsay before the hearing and could have subpoenaed the declarant; (3) the information was not inconsistent on its face; and (4) the information has been recognized by courts as inherently reliable. Id.

In Sanders, the Court reviewing the evidence in light of J.A.M. Builders held that police reports containing a declarant's statements that he was an unauthorized resident of tenant's housing unit were unreliable hearsay based on the fact that the declarant had potential bias against the tenant because he was arrested for domestic violence based on the tenant's accusation and the tenant did not have the authority to subpoena the individual or the reporting officers in order to test the hearsay evidence at a pretermination hearing. Id.

In the present case, the first step – the evaluation of a declarant's bias – is virtually impossible to apply since neither party knows the identity of any declarant or what statements were made. Ms. Yarbrough would assert that not knowing the identity of a declarant would make their statement less reliable and probative rather than more. Regarding the second step in evaluating hearsay, as noted by the Basco Court, the Plaintiff would state that "The primary J.A.M . Builders factor that counsels against basing an adverse administrative determination on those hearsay statements is the second factor, as the Bascos could not subpoena the [declarants] for cross-examination." Basco at 1183. Because the criminal charges pending against Ms. Yarbrough were dismissed, she also had no opportunity to subpoena the officer and cross-

examine him/her. Similarly the Plaintiff has no access to subpoena powers in the hearing in this case.

Regarding the third step in evaluating hearsay evidence the Plaintiff would point out that indictment is inconsistent to the extent that the only witness listed on the face of the indictment does not appear to have knowledge of the alleged events.

In regards to the final J.A.M. Builders factor Ms. Yarbrough would point out that numerous courts have found indictments to be unreliable. As one Court of Appeals has stated "many criticize the modern grand jury as no more than a "rubber stamp" for the prosecutor." United States v. Navarro-Vargas, 408 F.3d 1184, 1195 (9th Cir. 2005) (where the court cites numerous sources regarding the lack of any meaningful review by a grand jury).[4] In another, more colorful, review of the current state of the American grand jury a judge in New York stated, "Many lawyers and judges have expressed skepticism concerning the power of the Grand Jury. This skepticism was best summarized by the Chief Judge of this state in 1985 when he publicly stated that a Grand Jury would indict a 'ham sandwich.'" In re Grand Jury Subpoena of Stewart, 144 Misc. 2d 1012, 1015 (N.Y. Sup. Ct. 1989).

### III. The Hearing Officer could not have based his decision on any perceived "demeanor" of the Plaintiff.

Each of these cases from the Eleventh Circuit has also acknowledged that a Public Housing Authority "has the burden of persuasion and must initially present sufficient evidence to establish a prima facie case" at an administrative hearing.  See Basco v. Machin, 514 F.3d 1177

---

[4] Although similar statistics are not available for the State of Alabama of the 162,000 federal cases prosecuted by U.S. attorneys in 2010, the most recent year for which we have data, grand juries declined to return an indictment in 11 of them. See Federal Justice Statistics 2010 - Statistical Tables available at www.bjs.gov/content/pub/pdf/fjs10st.pdf

(11th Cir. 2008). In this case, the only evidence offered by the Housing Authority to meet that burden is the indictment. It is unclear how the hearing officer could evaluate or make determinations about the Plaintiff's guilt or innocence since she did not discuss any of the facts regarding the allegations.  The Plaintiff's statements on this matter largely regarded the procedural nature of the court case and are undisputed. To the extent that the law requires the Defendant to present a prima facie case, it defies logic for them to assert that part of their case was her silence, her demeanor or her testimony when they elected not to question her on the matter.

The only way that the Hearing Officer could use his observation of the Plaintiff to determine her guilt was if she simply looked so guilty that he could simply determine her guilt without having her speak about the issue. Such a determination would not only be unreliable but is also appears substantially similar to the "sit and squirm" test regarding Social Security applicants. See <u>Wilson v. Heckler</u>, 734 F.2d 513 (11th Cir. 1984) (where the Eleventh Circuit stated that although it was within the providence of an administrative hearing officer to evaluate testimony they many not independently draw their own conclusions about a Social Security applicant's pain simply by observing them without using medical information).

The Code of Federal Regulations section related to the hearing decision (24 CFR 982.555(e)(6)) requires that:

> The person who conducts the hearing must issue a written decision, stating briefly the reasons for the decision. Factual determinations relating to the individual circumstances of the family shall be based on a preponderance of the evidence presented at the hearing. A copy of the hearing decision shall be furnished promptly to the family.

The hearing officer's decision does not include any indication that the Plaintiff's behavior or demeanor played any part in his decision. In his decision, it is clear that the only evidence he

reviewed on this matter was the indictment offered by the Defendant. Although his reasoning is not spelled out in great detail, it appears that he believes that a criminal conviction requires proof beyond a reasonable doubt and that the decision to indict but not prosecute necessarily is proof of the crime committed.

In the hearing officer's decision he notes that he reviewed the indictment offered by the housing authority. He incorrectly states that another hearing officer had heard a previous case (he was the hearing officer at the previous case). The hearing officer also incorrectly states that a previous hearing officer's decision had been nullified by a federal court for failing to provide sufficient advance notice of documents used in a prior hearing. Although there has been a prior federal filing involving the Plaintiff and Defendant it was resolved shortly after being filed by the agreement of the parties and involved neither the issue of advance notice nor any criminal conduct. To the extent that hearing officer appears to have relied upon these two facts he is not only entertaining issues that were not presented to him at the hearing but also issues which neither party could agree are true.

In all of the Eleventh Circuit cases cited by the Plaintiff – <u>Basco</u>, <u>Lane</u>, <u>Ervin</u>, <u>Sanders</u> and <u>Taylor</u> - the courts have focused on the facts that: 1) That the hearsay evidence raised serious questions about the validity of the underlying facts (mostly due to inability to cross-examine witnesses) that it was offered to prove and 2) Based on the underlying weakness of the evidence the Housing Authority had failed to meet its burden at the hearing. In each of the Eleventh Circuit cases cited the voucher holder did testify at their own hearing and are therefore not distinguishable on the basis that the hearing officer could observe the voucher holder's demeanor. The Housing Authority's claim that a hearing officer may determine the credibility of a witness when they are not questioned about a subject is clearly in conflict with this line of

cases. In each of these cases the hearing officer was able to observe the witness and if it were legally permissible to establish guilt based solely on their testimony then each of these holdings would have been resolved in favor of the Housing Authority instead of the recipient.

Even the case cited by the Defendant in this matter, Costa v. Fall River Housing Authority, 903 N.E.2d 1098 (2009), for the proposition that hearsay should be allowed at Section 8 termination hearings states that "unattributed, multi-level, and conclusory hearsay evidence" should not be relied upon. In this case there is no indication of who the unknown informant was (unattributed), whether he had any direct proof or was repeating statements from an information (multi-level) and it does not offer any of the underlying facts only the (conclusory) proposition of fact that the Plaintiff had committed a drug-related offense.  It is worth noting that in Costa as well that court did not hold that the observation of the voucher holder could be used as sufficient evidence to corroborate that hearsay.

In support of their positions the Housing Authority cites United States v. Ramirez-Chilel, 289 F.3d 744 (11th Cir. Fla. 2002). In Ramirez-Chilel the question before the court involved the review on witness testimony in a hearing regarding the failure of law enforcement to seek a search warrant. In that case the Defendant, his wife and two law officers gave different first-hand accounts of the night in question. Ms. Yarbrough takes no issue with the American tradition of vesting a hearing officer with substantial deference in judging the contradicting testimony of witnesses. In fact, the Ramirez-Chilel court illustrates well the general principle of due process of law by which citizens are allows to cross-examine their accusers prior to the forfeiture of their property or rights.

In support of their position the Housing Authority also cites Williams v. Housing Authority of Raleigh, 595 F. Supp. 2d 627 (E.D.N.C. 2008). In Williams the Housing Authority

offered numerous written statements from a landlord and offered the testimony of the individual who had been with the landlord as the statement were prepared. The Housing Authority cites a portion of the case which states that a hearing may "assess… credibility at the informal hearing and infer the opposite of her testimony." The testimony referred to was a notice offered by the recipient which she claimed was authored by the landlord but where the landlord's name was misspelled. The Williams case is also distinguishable since, as previously noted, the testimony by the recipient has never been in question by either party.

The Housing Authority's attempt to rely upon Ms. Yarbrough's silence as proof of their case remains illogical since the Housing Authority has the burden of persuasion and must initially present sufficient evidence to establish a prima facie case at an administrative hearing. The Housing Authority can therefore neither claim that her undisputed testimony is sufficient to confirm her guilt in this matter nor that her silence is sufficient to carry their burden at the hearing.

**IV.    The hearing Officer's decision is in clear violation of HUD's recent guidance on arrests.**

Although the Defendant cites recent HUD guidance support of their position that the Housing Authority was entitled to rely upon the arrest and indictment as sufficient proof of guilt HUD's guidance actually states, "the fact that there has been an arrest for a crime is not a basis for the requisite determination that the relevant individual engaged in criminal activity warranting denial of admission, termination of assistance, or eviction." See Exhibit "C."

The Defendant's Brief also mistakenly applies a portion of guidance regarding another Housing Authority process to the hearing. The Housing Authority termination process actually requires two separate steps: 1.) the Housing Authority must first gather enough information to

12

determine that a project violation occurred and then 2.) provide a due process hearing where the Housing Authority proves by a preponderance of the evidence that a violation occurred. In the HUD guidance regarding the first step – the Housing Authority's decision to initiate proceedings - it states that PHAs, "can utilize other evidence, such as police reports detailing the circumstances of the arrest, witness statements, and other relevant documentation to assist them <u>in making a determination</u> that disqualifying conduct occurred." Regarding the second step – the tenant's right to a hearing – the guidance goes on to state, "In either case, the tenant must be afforded the basic elements of due process, including the right to be represented by counsel, to question witnesses, and to refute any evidence presented by the PHA or owner."

It is worth noting that HUD has followed this guidance in public housing with additional guidance regarding the application of the Fair Housing Act for all landlords attempting to utilize arrest records <u>without convictions</u> stating:

> "A housing provider with a policy or practice of excluding individuals because of one or more prior arrests (**without any conviction**) cannot satisfy its burden of showing that such policy or practice is necessary to achieve a substantial, legitimate, nondiscriminatory interest. As the Supreme Court has recognized, "[t]he mere fact that a man has been arrested has very little, if any, probative value in showing that he has engaged in any misconduct. An arrest shows nothing more than that someone probably suspected the person apprehended of an offense." Because arrest records do not constitute proof of past unlawful conduct and are often incomplete (e.g., by failing to indicate whether the individual was prosecuted, convicted, or acquitted), the fact of an arrest is not a reliable basis upon which to assess the potential risk to resident safety or property posed by a particular individual. For that reason, a housing provider who denies housing to persons on the basis of arrests not resulting in conviction cannot prove that the exclusion actually assists in protecting resident safety and/or property.
>
> Analogously, in the employment context, the Equal Employment Opportunity Commission has explained that barring applicants from employment on the basis of arrests not resulting in conviction is not consistent with business necessity under Title VII because the fact of an arrest does not establish that criminal conduct occurred." See Exhibit "D."

Similarly the HUD public housing guidance is dismissive of cases involving indictments stating, "reliance on arrests not resulting in conviction as the basis for denying applicants or terminating the assistance or tenancy of a household or household member may result in unwarranted denials of admission to or eviction from federally subsidized housing." The guidance goes on to state, "In many cases, arrests do not result in criminal charges, and even where they do, such charges can be and often are dismissed or the person is not convicted of the crime alleged. In fact, in the 75 largest counties in the country, approximately one-third of felony arrests did not result in conviction, with about one-quarter of all cases ending in dismissal."

## CONCLUSION

The termination of housing assistance payments, based upon reasons not authorized by the Act or the regulations governing the program, is without any legal authority and is therefore arbitrary and capricious and violates the Plaintiff's right to due process of law under the Fourteenth Amendment of the Constitution. The above-described acts and omissions make clear that the Plaintiff's due process rights were violated by the Housing Authority in its attempt to terminate her housing assistance payments, thus denying her adequate notice or a meaningful opportunity to be heard. Therefore the Defendant's Motion for Summary Judgment is without merit and due to be DENIED.

Respectfully Submitted:

/s/ Michael Forton
Michael Forton
Attorney for the Plaintiff
Legal Services Alabama
1115-F Church Street
Huntsville, Alabama 35801
(256) 536-9645, ext. 3319

## CERTIFICATE OF SERVICE

      I hereby certify that I have served the foregoing on the Defendant's attorneys by electric filing this August 18, 2016.

/s/ Michael Forton
Michael Forton