FILED
2017 Mar-07  AM 10:18
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

|  |  |  |
|---|---|---|
| **SHEENA YARBROUGH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action Number** |
| **v.** | ) | **5:15-cv-2325-AKK** |
| | ) | |
| **DECATUR HOUSING** | ) | |
| **AUTHORITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Sheena Yarbrough brings this action against Decatur Housing Authority ("DHA") pursuant to 42 U.S.C. § 1983,[1] alleging violations of her federally protected rights under Section 8 of the U.S. Housing Act of 1937, 42 U.S.C. § 1437 ("Section 8") and various amendments to the United States Constitution. Doc. 1 at 3. The court has for consideration DHA's motion for summary judgment, doc. 30, which is fully briefed, docs. 31; 34; 35, and Yarbrough's motion for summary judgment, doc. 40, which raises the same arguments she raised in her opposition to DHA's own motion. For the reasons stated below, DHA's motion is due to be granted and Yarbrough's motion is due to be denied.

---

[1] *See Doe v. Sch. Bd.*, 604 F.3d 1248, 1265 (11th Cir. 2010) ("Section 1983 does not create any substantive federal rights in and of itself; it is merely a vehicle to bring such suits. Therefore, a § 1983 plaintiff must allege a specific federal right violated by the defendant.") (citation omitted).

## I.    STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." To support a summary judgment motion, the parties must cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c). Moreover, "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress*

& *Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual disputes will be resolved in the non-moving party's favor when sufficient competent evidence supports the non-moving party's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Furthermore, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

"The standards governing cross-motions for summary judgment are the same, although the court must construe the motions independently, viewing the evidence presented by each moving party in the light most favorable to the non-movant." *Lozman v. City of Riviera Beach*, 39 F. Supp. 3d 1392, 1404 (S.D. Fla. 2014) (citing *Shazor v. Professional Transit Management, Ltd.*, 744 F.3d 948 (6th Cir. 2014)); *see also U.S. v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984)

(applying the Rule 56 summary judgment standard where both parties moved for summary judgment). However, "cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *Bricklayers, Masons & Plasterers Int'l Union v. Stuart Plastering Co.*, 512 F.2d 1017, 1023 (5th Cir. 1975). Nonetheless, "[c]ross motions for summary judgment may be probative of the nonexistence of a factual dispute when . . . they demonstrate a basic agreement concerning what legal theories and material facts are dispositive." *Id.* "Indeed, when both parties proceed on the same legal theory and rely on the same material facts the court is signaled that the case is ripe for summary judgment." *Shook v. U.S.*, 713 F.2d 662, 665 (11th Cir. 1983). That is precisely the case here, as the parties appear to be in agreement that the material facts are undisputed and that certain narrow legal issues — namely, the legal sufficiency of the indictments — are dispositive of the claims joined herein.

## II.    FACTUAL BACKGROUND

Yarbrough was a participant in the Section 8 Housing Assistance program provided through the Department of Housing and Urban Development ("HUD"). Docs. 1 at 1; 17-1 at 2–3. The Section 8 Voucher Program provides low income families assistance with rental payments and is administered by public housing authorities ("PHAs"), such as DHA. *Id.* On April 6, 2011, Yarbrough signed a

4

copy of *Obligations of the Participating Family* from HUD, which provided, in part, that "members of the family may not engage in drug-related criminal activity." Doc. 32-7 at 2–3. As of April 4, 2013, the DHA "must terminate program assistance for a participant . . . [i]f any member of the family commits drug-related . . . criminal activity in violation of Section 2.3 of this Administrative Plan and 24 CFR 982.551." Doc. 17-3 at 2–3.

In September 2012, through a newspaper article, DHA learned that Yarbrough was arrested on charges of drug-related criminal activity. Doc. 20-2 at 38:00–41:00. As a result, DHA notified Yarbrough that it intended to terminate her program assistance. *Id.* In response, Yarbrough denied any involvement in unlawful drug activity and requested a hearing. *Id.* At the hearing, the hearing officer found that Yarbrough had carried out unlawful drug-related activity and would have to move from her home. *Id.* However, based on legal advice, DHA decided that Yarbrough could keep her voucher and that it would postpone any decision to terminate her housing assistance subsidies "until a court date or decision was rendered." *Id.* at 10:00–10:30; 38:00–41:00.

On April 11, 2013, based on the September 2012 arrest, a grand jury at the Limestone County Circuit Court of Alabama indicted Yarbrough on two counts of unlawful distribution of a controlled substance for selling "a quantity of Lortab" and "a quantity of Xanax" to an undercover police officer. Docs. 17-5 at 2–5. The

last substantive update from Yarbrough's case stated that "[t]he state moves to dismiss the case upon payment of court costs and the Defendant occurs [sic]. It is the order of the court that this case will be dismissed upon payment of court costs." Docs. 20-2 at 25:21–29:20; 34-1 at 7. The state court has since continued the case to allow Yarbrough to pay court fees and the case is still pending. *Id.*

On October 8, 2015, DHA sent Yarbrough a new notice, advising her that it intended to terminate her participation in the Section 8 program on November 30, 2015, due to violations of Housing Choice Voucher #4: *Obligations of the Family*. Allegedly, in addition to her arrest and subsequent indictment for drug-related activity, Yarbrough failed to (1) notify DHA of a change in family income and composition in January 2015; (2) report her household income from 2011 through 2013; and (3) make required payments to DHA since February 2015. Docs. 1 at 2; 1-1 at 2. At Yarbrough's request, DHA held a hearing. Doc. 1-1 at 2. Thereafter, the hearing officer issued a decision finding that DHA failed to establish violations on all counts except for the accusation that Yarbrough had "violated her agreement with the Authority and her lease by engaging in drug-related criminal activity." Doc. 1-1 at 4, 6–7. As a result, the hearing officer upheld DHA's decision to terminate Yarbrough's participation in the program. *Id.* at 6.

In his written decision, the hearing officer explained that DHA sufficiently established that Yarbrough had engaged in drug-related criminal activity by

presenting evidence of Yarbrough's arrest and subsequent indictment for two felony counts of unlawful distribution of a controlled substance. Doc. 1-1 at 3. The hearing officer further noted that although Yarbrough presented "credible evidence that the cases will be dismissed on payment of court costs," *id.* at 4; doc. 34-1 at 7, the fact that the charges remain pending and that the indictments were issued by "a duly impaneled grand jury" is sufficient proof that "more likely than not, i.e., by a preponderance of the evidence, [that] Ms. Yarbrough engaged in drug related criminal activity in violation of the terms of her agreement with the Authority." Doc. 32-2 at 3–4. The hearing officer also considered Yarbrough's assertion that she and DHA had reached an agreement precluding DHA from acting on the termination of benefits until after the court issued a decision on the criminal cases. *Id.* at 4. To support her contention, Yarbrough relied on an internal note produced by DHA, which indicated that DHA's legal counsel had advised it to continue paying Yarbrough's subsidy "until a court decision is rendered." *Id.*; doc. 20-2 at 10:00–10:30; 38:00–41:00. However, the hearing officer ultimately found that "[t]his note falls woefully short of an agreement to withhold termination action pending final adjudication of the criminal action." Doc. 32-2 at 3–4. As such, the hearing officer determined that Yarbrough had violated her agreement due to her involvement in drug-related criminal activity and upheld DHA's termination of Yarbrough's Section 8 housing benefits. *Id.* at 7. Following the hearing, DHA

informed Yarbrough that her benefits would cease on December 31, 2015. Docs. 1-2 at 3; 6 at 3.

## III.   ANALYSIS

Yarbrough's complaint pleads two counts — (1) alleged violations of HUD regulations and requirements by issuing a "decision [that] was based completely on hearsay evidence without legal or factual support" and by failing to "provide a hearing with an impartial hearing officer,"[2] doc. 1 at 2; and (2) alleged denial of due process in violation of the Fifth and Fourteenth Amendments to the Constitution, *id.* at 3. More specifically, Yarbrough contends that DHA violated her rights under the Constitution when it terminated her housing assistance payments without providing her due process by failing to provide her with adequate notice, a meaningful opportunity to be heard, and by basing the decision

---

[2] Although Yarbrough pleads that DHA failed to provide an impartial hearing officer, *see* doc. 1 at 2, Yarbrough does not seem to have advanced any arguments regarding the alleged violation of her rights in response to DHA's motion for summary judgment. Therefore, Yarbrough has abandoned this claim. *See Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 971 n.36 (11th Cir. 2008) ("Martin did not defend the claim on summary judgment; he thus abandoned it."). Alternatively, to the extent Yarbrough is arguing that the hearing officer was not impartial because he purportedly relied on the decision of a previous informal administrative hearing, *see* docs. 1 at 2; 34 at 10; 40 at 18, the court disagrees because the hearing officer based his conclusion that Yarbrough had engaged in criminal activity on the indictments before him and not the outcome of the previous hearing. *See* docs. 32-2 at 2–3; 32-13 at 4–5. Indeed, Yarbrough acknowledges that "it appears [the hearing officer] relied solely on the fact that the grand jury had found probable cause for indictment in making his decision." Doc. 34-1 at 4; *see also* doc. 40 at 17 ("In his decision it is clear that the only evidence [the hearing officer] reviewed on the matter was the indictment offered by the Defendant."). Therefore, while the hearing officer refers to the previous hearing in his opinion, *see* doc. 32-2 at 3, the hearing officer merely noted a procedural fact presented by both parties at the hearing, *see* doc. 20-2 at 9:55–10:20, 38:00–39:12, and not a material one.

to terminate solely on unreliable hearsay evidence.[3] Doc. 1 at 2–3. The court addresses these contentions below, and, for the reasons that follow, finds that Yarbrough has failed to meet her burden, that her motion for summary judgment is due to be denied, and DHA's motion is due to be granted.

### A. DHA Provided Yarbrough Sufficient Notice

In order to terminate Section 8 housing assistance, due process requires:

> (1) timely and adequate notice, including the reasons for the proposed termination, (2) an opportunity to be heard at a pre-termination hearing, including the right to present evidence and confront and cross-examine witnesses, (3) a right to be represented by counsel at the hearing, (4) a written decision, including the reasons for the determination and the evidence on which the decision maker relied, and (5) an impartial decision maker.

*McCall*, 809 F. Supp. 2d at 1324 (citing *Goldberg v. Kelly*, 397 U.S. 254, 266–71 (1970)). An adequate notice of termination must "give the family prompt written notice that the family may request a hearing," 24 C.F.R. § 982.555(c)(2), and must: "(i) Contain a brief statement of reasons for the decision; (ii) State that if the family does not agree with the decision, the family may request an informal hearing on the decision, and (iii) State the deadline for the family to request an informal hearing." 24 C.F.R. § 982.555(c)(2)(i)–(iii). Based on the record before this court, DHA complied with the notice requirements. Specifically, DHA sent Yarbrough a termination notice, doc. 32-1 at 2, in which it listed the following

---

[3] Yarbrough's motion for summary judgment focuses solely on the hearsay contention. *See generally* doc. 40.

reasons for terminating Yarbrough's housing assistance, including: "D. <u>The family</u> <u>(including each family member) must not:</u> 3. <u>Commit fraud, . . . or any other</u> <u>corrupt or criminal act in connection with the program.</u> 4. <u>Engage in drug-related</u> <u>criminal activity.</u>" *Id.* (emphasis in original). DHA also provided the time period and the exact arrests and indictments that formed the basis for its decision to initiate termination procedures, stating, "in or around September 2012 you were arrested for drug related activity, and on April 11, 2013, you were indicted for unlawful distribution of [a] controlled substance." Doc. 32-1 at 2.  The termination notice further informed Yarbrough that "[y]ou are entitled to an informal hearing at the Housing Authority at which you may be represented, may present evidence and witnesses. If you wish to have this hearing, you must request it in writing within ten (10) calendar days of the date of this letter." *Id.* This notice sufficiently satisfies the requirements laid out by 24 C.F.R. § 982.555(c)(2). Accordingly, DHA's motion is due to be granted on this issue.

### B. Yarbrough Received A Meaningful Opportunity To Be Heard

The opportunity to be heard is "[t]he fundamental requisite of due process of law . . . ." *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) (citation omitted). This entails that "[t]he hearing must be 'at a meaningful time and in a meaningful manner,'" *id.* (citation omitted), and that the public assistance recipient have "an effective opportunity to defend [against termination] by confronting any adverse

witnesses and by presenting [her] own arguments and evidence orally," *id.* at 268. Although "[i]nformal procedures will suffice," *id.* at 269, the recipient must be allowed to retain an attorney if she so desires, *id.* at 270, and "have an opportunity to examine any documents or records or regulations related to the proposed action," 42 U.S.C. § 1437d(k)(3).

Contrary to Yarbrough's contention, DHA in fact provided her sufficient opportunity to be heard. Specifically, Yarbrough requested and received a pre-termination hearing. Docs. 20-2; 32-2 at 2; 32-9 at 2; 32-10 at 2. At the hearing, Yarbrough had counsel, docs. 20-2 at 00:00–00:54; 32-2 at 2, testified, doc. 20-2 at 29:40–43:30, and had the opportunity to cross-examine the DHA's representative and sole witness at the hearing, *id.* at 15:19–25:21. Moreover, Yarbrough had an opportunity to review all the documents DHA intended to present prior to the hearing. Doc. 20-2 at 2:20–2:56. Therefore, the court finds that Yarbrough had a meaningful opportunity to be heard prior to the termination of her benefits, and that DHA is also due summary judgment on this issue.

## C. The Hearing Officer Properly Relied On The Evidence Presented

Yarbrough further contends that DHA violated her right to due process by basing its decision on hearsay evidence, *i.e.*, the copies of the indictments against

her.[4] Doc. 1 at 2. At issue here is whether the hearing officer properly relied on the indictments to find that, by a preponderance of the evidence, Yarbrough had engaged in drug-related criminal activity.[5] As Yarbrough puts it in her motion, "Yarbrough contends that as a matter of law an unsupported grand jury indictment is . . . not sufficient evidence to support the termination of [her] benefits." Doc. 40 at 16. Consequently, Yarbrough contends that she is entitled to summary judgment on this issue.

Relevant here, "[t]he Housing Authority has the burden of persuasion in Section 8 termination hearings and 'must initially present sufficient evidence to establish a prima facie case' that Plaintiff violated her Section 8 obligations in a manner justifying termination." *Sanders v. Sellers-Earnest*, 768 F. Supp. 2d 1180, 1185 (M.D. Fla. 2010) (quoting *Basco v. Machin*, 514 F.3d 1177, 1182 (11th Cir. 2008)). At a termination hearing, "[e]vidence may be considered without regard to admissibility under the rules of evidence applicable to judicial proceedings." 24 C.F.R. § 982.555. "[H]earsay evidence may constitute substantial evidence in

---

[4] "[A] PHA . . . may not base a determination that an applicant or household engaged in criminal activity warranting . . . termination of assistance, or eviction on a record of arrest(s)." Doc. 32-5 at 5. However, PHAs may "utilize other evidence, such as police reports detailing the circumstances of the arrest, witness statements, and other relevant documentation to assist them in making a determination that disqualifying conduct occurred." *Id.* Here, the hearing officer relied on "other relevant documentation," *i.e.*, the indictments, rather than the underlying arrests.

[5] DHA "may terminate assistance for criminal activity . . . if [it] determines, based on a preponderance of the evidence, that the household member has engaged in the activity, regardless of whether the household member has been arrested or convicted of such activity." Doc. 32-8 at 4 (DHA's Administrative Plan).

administrative proceedings *as long as* factors that assure the 'underlying reliability and probative value' of the evidence are present." *U.S. Pipe and Foundry Co. v. Webb*, 595 F.2d 264, 270 (5th Cir. 1979) (emphasis added) (citations omitted).[6] The "underlying reliability and probative value" of hearsay evidence depends on whether:

> (1) the out-of-court declarant was not biased and had no interest in the result of the case; (2) the opposing party could have obtained the information contained in the hearsay before the hearing and could have subpoenaed the declarant; (3) the information was not inconsistent on its face; and (4) the information has been recognized by courts as inherently reliable. ["The *J.A.M. Builders* test"].

*Basco*, 514 F.3d at 1182 (citing *J.A.M. Builders, Inc. v. Herman*, 233 F.3d 1350, 1354 (11th Cir. 2000)).

According to Yarbrough, indictments do not constitute substantial evidence under the *J.A.M. Builders* test. Doc. 34 at 6–9. Therefore, Yarbrough contends that DHA failed to present a *prima facie* case regarding her alleged criminal conduct. *Id.* Yarbrough presents four main reasons to support her contention that DHA cannot rely on the indictments to make a *prima facie* case. For the reasons stated below, none of Yarbrough's contentions are persuasive, and, as a result, her motion is due to be denied.

---

[6] The applicable regulations expressly state that hearsay and other "evidence may be considered without regard to admissibility under the rules of evidence applicable to judicial proceedings." 24 C.F.R. § 982.555(e)(5).

First, Yarbrough argues that the anonymity of the grand jurors who indicted her "make [the indictments] less reliable and probative rather than more." Doc. 34 at 7. However, the Fifth Amendment requires only that an indictment be "returned by a legally constituted and unbiased grand jury." *Costello v. United States*, 350 U.S. 359, 363 (1956). There is no contention by Yarbrough that the grand jury that issued the indictments against her was illegally constituted or biased. Therefore, her first contention is unavailing.

Second, Yarbrough argues that the anonymity provided to grand jurors precluded her from issuing them subpoenas, and, because the court agreed to dismiss the actual criminal charges against her (pending court costs), she had no opportunity to subpoena the witness (Officer Lance Royals) for a trial and cross-examine him.[7] Docs. 32-4 at 3, 5; 34 at 1, 8–9. Again, the Fifth Amendment only requires that indictments are returned by legally constituted and unbiased jurors. *See Costello*, 350 U.S. at 363. There is no requirement under the Constitution for a defendant to cross-examine grand jurors. Next, Yarbrough's contention that she never had an opportunity to cross-examine Officer Royals at a criminal trial or before the hearing officer also misses the mark. As an initial matter, presumably, Yarbrough and her counsel agreed to a dismissal of her criminal case in exchange

---

[7] Yarbrough also contends that her inability to subpoena Royals for the administrative hearing further prevented her from challenging the information. Doc. 34 at 7–8 ("Because the criminal charges pending against Ms. Yarbrough were dismissed, she also had no opportunity to subpoena the officer and cross-examine him/her. Similarly the Plaintiff has no access to subpoena powers in the hearing in this case.").

for court costs, and in doing so, agreed to forego her rights under the Sixth Amendment Confrontation Clause. Also, Yarbrough had access to the indictment documents through her criminal case and also received advanced notice that DHA intended to use the indictments as evidence at her administrative hearing. *See* doc. 20-2 at 00:00–00:20, 2:23–3:00.[8] Thus, Yarbrough had the opportunity to prepare appropriate rebuttal evidence for the hearing, including, if she was so inclined, to obtain a statement from Officer Royals or from witnesses who could contradict Officer Royal's contention that Yarbrough had engaged in criminal drug activity.

Third, Yarbrough argues that the indictments are inconsistent, because "the only witness listed on the face of the indictment [*i.e.*, Officer Royals] does not appear to have knowledge of the alleged events." Doc. 34 at 8. However, "without evidence of perjury or government misconduct," an indictment is not flawed "simply because it is based on testimony that later may prove to be questionable. Such a rule of law would necessitate independent judicial review of the credibility of grand jury witnesses, an exercise that would seriously infringe upon the traditional independence of the grand jury." *See United States v. Hyder*, 732 F.2d 841, 845 (11th Cir. 1984) (quoting *United States v. Sullivan*, 578 F.2d 121, 124 (5th Cir. 1978)) (internal quotations omitted). Therefore, where, as here, the court

---

[8] In fact, the hearing officer postponed the hearing to allow the parties an opportunity to exchange discovery materials, and both parties conceded at the hearing that they had done so to their "satisfaction." Doc. 20-2 at 02:20–02:57.

only has Yarbrough's allegation regarding the witness's purported lack of first-hand knowledge of her case, the court concludes that the indictments are consistent on their face, as they indict Yarbrough for the same crimes for which she was arrested and charged, and do not conflict with any of the evidence presented to the hearing officer.

Finally, Yarbrough contends that indictments are generally unreliable, doc. 34 at 8,[9] and argues that the court should treat them like arrest reports, upon which HUD does not allow PHAs to "base a determination that an applicant or household engaged in criminal activity warranting . . . termination of assistance." Doc. 32-5 at 5; *see also id.* at 4 (arrest records "show nothing more than that someone probably suspected the person apprehended of an offense" and "[i]n many cases, arrests do not result in criminal charges, and even where they do, such charges can be and often are dismissed or the person is not convicted of the alleged crime"). The court disagrees. Indictments are distinct from arrest reports and are sufficiently reliable, because they "conclusively determine[] the existence of probable cause to believe the defendant perpetrated the offense alleged." *Kaley v. United States*, 134 S. Ct.

---

[9] Specifically, Yarbrough points to two cases: (1) *United States v. Navarro-Vargas*, 408 F.3d 1184, 1195 (9th Cir. 2005), referencing that "many criticize the modern grand jury as no more than a 'rubber stamp' for the prosecutor;'" and (2) *In re Grand Jury Subpoena of Stewart*, 144 Misc.2d 1012, 1016 n.1 (N.Y. Sup. Ct. 1989), explaining that "many lawyers and Judges have expressed skepticism concerning the power of the Grand Jury . . . [because] a Grand Jury would indict a 'ham sandwich.'" Doc. 34 at 8. These cases are not persuasive, in part, because the courts were merely discussing a variety of views regarding grand juries and made no finding regarding their reliability.

1090, 1097 (2014) (citations and quotations omitted); *see also* doc. 40 at 15 n.3 ("The task of the grand jury is not to determine the guilt [of] a party but determine whether or not the State has can [sic] demonstrate a prima facie case to move forward to a trial.") (citations omitted). Therefore, the indictments are legally sufficient to establish by a preponderance of the evidence, as the hearing officer found, that Yarbrough engaged in the alleged drug-related criminal activity.

Based on the court's review of the evidence, the record belies Yarbrough's contention that DHA failed to make a *prima facie* case. To the contrary, it did so by presenting evidence of Yarbrough's arrest and her subsequent indictments. The reliance on this hearsay evidence was proper because it had the requisite underlying reliability and probative value. As such, the court finds that DHA met its burden of persuasion by establishing a *prima facie* case.

Because DHA met its burden, the burden of production shifted to Yarbrough to show that she had not engaged in the alleged drug-related criminal activity. *See Basco*, 514 F.3d at 1182. Apparently, based on her belief that DHA had failed to meet its burden through, in part, DHA's reliance on the indictments rather than presenting actual facts of Yarbrough's alleged criminal conduct, Yarbrough asserts that she had no burden to produce any evidence at the hearing. Doc. 34 at 4 n.1, 9, 12. Consequently, Yarbrough failed to present any specific evidence to rebut the contentions that she had engaged in the alleged criminal activity. *See* docs. 1; 20-2

at 29:40–41:50; 34. Instead, Yarbrough attempted to meet her burden twofold —
both of which failed to rebut DHA's *prima facie* case. First, Yarbrough testified
that she had a deal with the prosecutor to dismiss the charges after she paid court
costs. *See* docs. 20-2 at 39:24–40:00; 34-1; 40 at 10 (stating in her motion for
summary judgment that "[t]o rebut the hearsay evidence Yarbrough produced an
order of the court indicating that the charges against her were in the process of
being dismissed upon payment of court costs."). However, an agreement to dismiss
the charges in exchange for court costs is not the same thing as a dismissal on the
merits. Indeed, although the hearing officer concluded that "Yarbrough presented
credible evidence that [her criminal cases] will be dismissed on payment of court
costs," doc. 32-2 at 3, he still found that based on the preponderance of the
evidence Yarbrough had engaged in the underlying criminal activity.

Second, Yarbrough testified that she had an agreement with DHA to defer
the termination proceedings until after the resolution of her criminal cases. *See id.*
at 39:06–39:22, 40:14–40:55; docs. 32-2 at 3; 32-13 at 5. However, the hearing
officer rejected this contention, finding that Yarbrough had failed to prove, let
alone "present any evidence"[10] supporting this contention. Doc. 32-2 at 3.
Specifically, the hearing officer stated,

---

[10] In fact, when the hearing officer asked if Yarbrough had a written document showing that an
agreement existed, "the only written document" presented came from DHA's administrative
records in which DHA labeled Yarbrough's file as "pending action in this file." Doc. 20-2 at

> Yarbrough relies on an internal note produced by the Authority, indicating that the Authority's legal counsel had advised the Authority to continue paying Ms. Yarbrough's subsidy until a court decision is rendered. This note falls woefully short of an <u>agreement</u> to withhold termination action pending final adjudication of the criminal action.

*Id.* (emphasis in original). The court finds no error in this finding in light of the evidence before the hearing officer.[11]

---

40:00–40:30. This evidence does not sufficiently suggest or prove the existence of an agreement. Moreover, even if such an agreement had existed, it would not have disproved Yarbrough's alleged criminal activity because, as Yarbrough's counsel acknowledged, even with the purported agreement, DHA had the right to proceed with termination proceedings at a later date. *Id.* at 40:40–40:55.

[11] In their briefs, the parties disagree on whether the hearing officer's finding regarding the purported agreement rises to a credibility determination, and whether the hearing officer assessed Yarbrough's credibility in general. As Yarbrough puts it, "[t]he hearing officer's decision does not include any indication that [Yarbrough's] behavior or demeanor played any part in his decision." Doc. 34 at 9. Yarbrough adds also that "it is unclear how the hearing officer could evaluate or make determinations about [Yarbrough's] guilt or innocence since she did not discuss any of the facts regarding the allegations [in the hearing]. [Yarbrough's] statements on this matter largely regarded the procedural nature of the court case and are undisputed." *Id.*; *see also* doc. 40 at 12–13. The court disagrees because the hearing officer in fact addressed Yarbrough's credibility through his rejection of Yarbrough's contentions regarding the purported agreement. Specifically, while Yarbrough may contend that her testimony merely outlined "the procedural nature of the court case," it is clear from the record that the hearing officer found Yarbrough's testimony and evidence on this issue "woefully short." Consequently, although Yarbrough is correct that the hearing officer did not explicitly mention Yarbrough's credibility in his decision, *see* doc. 40 at 17, implicit in any finding expressly rejecting a witness's contention on a specific issue is a determination that the person's testimony is not credible. *See also* doc. 32-13 at 5 (the hearing officer explaining in his affidavit that he found Yarbrough's testimony on this particular issue was not credible). Therefore, Yarbrough's contention that "[t]he only way the Hearing Officer could use his observation of [Yarbrough] to determine her guilt was if she simply looked so guilty that he could simply determine her guilt without having her speak about the issue," doc. 34 at 9, is unavailing because specific denial or testimony about the underlying drug charge is not necessary for the hearing officer to assess Yarbrough's credibility. The hearing officer had the unique opportunity to observe Yarbrough and to assess her demeanor during her testimony, and in doing so had a bird's eye vantage point to make the determination about whether to believe Yarbrough.

Deference is given to the credibility determinations of fact finders in administrative hearings, unless those determinations are "inherently unreasonable or self-contradictory." *See N.L.R.B. v.*

In short, where, as here, DHA met its burden of persuasion, and Yarbrough failed to meet her burden of production to show that she had not engaged in the alleged criminal activity, *see Basco*, 514 F.3d at 1182, the court finds that the hearing officer's decision was proper in light of the evidence presented. Contrary to Yarbrough's contention, HUD regulations and the case law are clear that DHA can rely on hearsay evidence. Moreover, the hearsay evidence here had the requisite underlying reliability and probative value. If "the reviewing court [is] satisfied that the hearing officer's conclusions are supported by substantial evidence," then "deference must be shown to the factfinding [sic] of local housing authorities." *Clark v. Alexander*, 85 F.3d 146, 151–52 (4th Cir. 1996); *see also Home Health Servs. of the U.S., Inc. v. Schweiker*, 683 F.2d 353, 356–57 (11th Cir. 1982) ("The scope of review of agency actions is limited to a determination of whether the Board's findings are arbitrary, capricious, an abuse of discretion, not in accordance with the law or unsupported by substantial evidence in the record as

---

*United Sanitation Serv., Div. of Sanitas Serv. Corp.*, 737 F.2d 936, 938 (11th Cir. 1984); *see also United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) ("Credibility determinations are typically the province of the fact finder because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses."). Here, there is no suggestion that the hearing officer's determination as to the purported agreement, and Yarbrough's credibility in that regard, was inherently unreasonable or self-contradictory. To the contrary, Yarbrough's unsubstantiated assertion about a deferred agreement, her demeanor, and the indictments were sufficient for the hearing officer to find that DHA had met its burden and to find against Yarbrough. Therefore, the court holds that the hearing officer's credibility determination is not inherently unreasonable or self-contradictory and is entitled to deference. *See Parker v. Bowen*, 788 F.2d 1512, 1521 (11th Cir. 1986) ("The opportunity to observe the demeanor of a witness, evaluating what is said in the light of how it is said, and considering how it fits with the rest of the evidence gathered before the person who is conducting the hearing, is invaluable, and should not be discarded lightly.") (citation omitted).

a whole."). Accordingly, because the substantial evidence supports the hearing officer's finding that the preponderance of the evidence established that Yarbrough had engaged in criminal activity, and in light of Yarbrough's failure to establish that her constitutional rights were violated, Yarbrough's motion for summary judgment is due to be denied, and DHA's motion granted.

## IV.   CONCLUSION

For the aforementioned reasons, DHA's motion for summary judgment, doc. 30, is due to be granted, and Yarbrough's motion, doc. 40, is due to be denied. The court will enter a final order contemporaneously herewith.

**DONE** the 6th day of March, 2017.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE